# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| In Re: ) | **JUDGE RICHARD L. SPEER** |
| Gabrielle Jones ) | |
| ) | Case No. 11-3127 |
| Debtor(s) ) | |
| ) | (Related Case: 11-32030) |
| Ericka Parker, Trustee ) | |
| Plaintiff(s) ) | |
| v. ) | |
| James Lewis ) | |
| Defendant(s) ) | |

## DECISION AND ORDER

This cause comes before the Court on the Motion of the Plaintiff/Trustee, Ericka S. Parker, for Summary Judgment. (Doc. No. 9). Said motion is brought on the Trustee's complaint to avoid, as a preferential transfer, a prepetition payment made by the Debtor to the Defendant. (Doc. No. 1). Against the Trustee's Motion for Summary Judgment, the Defendant filed a Response, objecting to the relief sought by the Trustee. (Doc. No. 10). In support of their respective positions, each of the Parties submitted written arguments. The Court has now had the opportunity to review the arguments submitted to the Court, as well as the supporting exhibits. Based upon this review, and for the following reasons, the Court finds that the Trustee's Motion for Summary Judgment should be Granted.

Ericka Parker, Trustee v. James Lewis
Case No. 11-3127

## FACTS

On April 12, 2011, the Debtor, Gabrielle M. Jones, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. The Plaintiff, Ericka Parker, was thereafter appointed trustee of the Debtor's bankruptcy estate. The Defendant, James J. Lewis, is the father of the Debtor.

At the time she filed for bankruptcy relief, the Debtor was the owner of a 2002 "Pontiac Grand Am." The vehicle's certificate of title shows that the vehicle is owned solely by the Debtor, that the vehicle was transferred to the Debtor in March of 2011 and that the purchase price for the vehicle was $5,602.35. The vehicle's certificate of title does not denote the existence of any lien.

To secure the necessary funds to purchase the Grand Am, the Debtor obtained a loan in the amount of $6,000.00 from the Defendant. In turn, the Defendant obtained the funds lent to the Debtor by taking a cash advance on a credit card. As evidence of their transaction, the Debtor executed two agreements: (1) a loan agreement, setting forth that the Defendant would be repaid over a 12-month term; and (2) a security agreement, dated February 26, 2011, granting to the Defendant a lien against the Debtor's Grand Am.

On March 20, 2011, the Debtor wrote a check to the Defendant for the sum of $3,000.00. The Defendant negotiated this check and then used the proceeds to partially repay the cash advance he had taken against his credit card. Citing to 11 U.S.C. § 547, the Trustee now seeks recover, as a preferential transfer, the $3,000.00 payment made by the Debtor to the Defendant.

Page 2

Ericka Parker, Trustee v. James Lewis
Case No. 11-3127

## DISCUSSION

Before this Court is the Trustee's Complaint to avoid, as a preferential transfer, the prepetition payment made by the Debtor to the Defendant. A matter such as this to determine, avoid, or recover a preferential transfer is deemed to be core proceedings pursuant to 28 U.S.C. § 157(b)(2)(F). Accordingly, as a core proceeding, this Court is conferred with jurisdiction to enter final orders and judgments in this matter. 28 U.S.C. § 157(b)(1).

Procedurally, the determination of the Trustee's action to avoid the prepetition transfer made by the Debtor to the Defendant is before this Court on the Trustee's Motion for Summary Judgment. The standard for summary judgment is set forth in Rule 56(a) of the Federal Rules of Civil Procedure, as made applicable to this Court by Bankruptcy Rule 7056. Under Rule 56(a), it is provided that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." With respect to this standard, the movant must demonstrate all the elements of his cause of action. *R.E. Cruise Inc. v. Bruggeman*, 508 F.2d 415, 416 (6th Cir.1975). In making this determination, the Court is directed to view all the facts in a light most favorable to the party opposing the motion. *Matsushita v. Zenith Radio Corp.*, 475 U.S. 574, 586–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

A prime policy goal of the Bankruptcy Code is to effectuate an equitable distribution of a debtor's nonexempt assets among similarly situated creditors. *In re Shelton Harrison Chevrolet, Inc.*, 202 F.3d 834, 837 (6th Cir. 2000). Creditors who improve their position in the time period immediately preceding the commencement of a debtor's bankruptcy case potentially frustrate this goal. To address this situation, the Bankruptcy Code empowers a bankruptcy trustee to avoid certain types of prepetition transfers made of a debtor's interest in property when the transfer occurs within 90 days of the commencement of the case (or within one year if the transferee qualifies as an

Page 3

Ericka Parker, Trustee v. James Lewis
Case No. 11-3127

"insider") and when the transfer has the effect of preferring one creditor over a debtor's other creditors. 11 U.S.C. § 547.

In order for a transfer to qualify as preferential, subjecting the transfer to avoidance within the meaning of the Bankruptcy Code, the transfer must satisfy the statutory elements contained in § 547. These elements, five in number, are set forth in paragraphs (1) through (5) of § 547(b), with this provision providing:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> > (A) on or within 90 days before the date of the filing of the petition; or
> >
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if
>
> > (A) the case were a case under chapter 7 of this title;
> >
> > (B) the transfer had not been made; and
> >
> > (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Page 4

Ericka Parker, Trustee v. James Lewis
Case No. 11-3127

The trustee bears the burden of proving, by at least a preponderance of the evidence, the existence of each of these elements. *In re Southern Air Transport, Inc.*, 511 F.3d 526, 534 (6th Cir. 2007). Thereafter, even if this evidentiary burden is sustained, recovery may still be denied to the trustee if the transferee can establish the existence of any one of the affirmative defenses set forth in § 547(c).

Against her action for the recovery of a preference, the Defendant acknowledged the existence of the first four elements set forth in § 547(b), controverting only the last element of a preferential transfer as set forth in paragraph (5): Whether the transfer enabled him to receive more than he would have received in a hypothetical Chapter 7 case had the transfer not occurred. In addition, the Defendant contends that, even if a preference exists for purposes of § 547(b), the Trustee may not avoid the transfer based upon what is referred to as the "ordinary course of business" defense set forth in § 547(c)(2). Each of these positions will now be addressed in order.

## 11 U.S.C. § 547(b)(5)

This fifth element of § 547(b) implements the central concept of a preferential transfer – an improvement by the creditor of its position vis-a-vis the estate as a result of the transfer. *See In re Auto Specialties Mfg. Co.*, 153 B.R. 510, 519 (Bankr. W.D.Mich.1993). To this end, § 547(b)(5) requires that a prepetition transfer only needs to be returned to the estate if the transfer enabled the creditor to receive value in excess of a distribution in a hypothetical Chapter 7 case. *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 465 (6th Cir. 1991). This element is one of common sense, arising from the notion that a creditor should not need to return to the estate a prepetition transfer if that creditor would have ultimately received a transfer of equal value had it waited for the liquidation and distribution of estate assets. *Smith v. Creative Fin. Mgmt., Inc., (In re Virginia-Carolina Fin. Corp.)*, 954 F.2d 193, 198-99 (4th Cir. 1992).

Page 5

Ericka Parker, Trustee v. James Lewis
Case No. 11-3127

It is the Defendant's position that the Trustee has not met her burden for purposes of § 547(b)(5) because he holds the status of a secured creditor in the Debtor's bankruptcy case. This status, according to the Defendant, means that the $3,000.00 payment made to him by the Debtor in the month immediately preceding her bankruptcy did not enable him to receive more than he would have if there were to be a distribution of estate assets. (Doc. No. 10, at pg. 1). The legal basis for this position is derived from the manner in which assets of a debtor's bankruptcy estate are distributed to creditors.

Assets of a debtor's bankruptcy estate are distributed to creditors according to the order of priority established by the Bankruptcy Code. *Braunstein v. McCabe*, 571 F.3d 108, 118 (1st Cir. 2009). Under its priority scheme, secured creditors are placed at the top, with the Bankruptcy Code recognizing a secured creditor's right to receive consideration equal to the value of its collateral or the right to recover its collateral. *See* 11 U.S.C. § 506; § 725. *See also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 5, 120 S.Ct. 1942, 1946, 147 L.Ed.2d 1 (2000) (administrative expenses do not have priority over secured claims); *United States v. Darnell (In re Darnell)*, 834 F.2d 1263, 1265 (6th Cir.1987) ("as a general rule, if a lien is perfected, it must be satisfied out of the asset(s) it encumbers before any proceeds of the asset(s) are available to unsecured claimants, including those having priority . . ."). This feature of bankruptcy law means that, as put forth by the Defendant, any prepetition transfer made to a secured claimant will ordinarily only provide such a creditor with consideration to which it was otherwise entitled to receive, thus negating the preferential aspect of the transfer for purposes of § 547(b)(5). *In re Southern Air Transport, Inc.*, 511 F.3d 526, 534 (6th Cir. 2007).

As the evidentiary basis for his position that he is a secured creditor, the Defendant relies on the security agreement executed by the Debtor in his favor. In her Motion for Summary Judgment, the Trustee did not contest the authenticity of this security agreement. Instead, in support of her burden under § 547(b)(5), the Trustee argues that, since the security agreement was not noted on the

Page 6

Ericka Parker, Trustee v. James Lewis
Case No. 11-3127

vehicle's certificate of title, the agreement did not operate to perfect the Defendant's lien on the vehicle.

Perfecting an interest in property, whether a security interest or a lien, is "the process whereby a security interest is protected, as far as the law permits, against competing claims to the collateral, which usually requires the secured party to give public notice of the interest . . . ." BLACK'S LAW DICTIONARY 1137 (9th ed. 1990). Whether a creditor's security interest is properly perfected is determined by applicable nonbankruptcy law[1] – here, Ohio law, since the security agreement was executed in Ohio by persons domiciled in Ohio.

Under Ohio law, the perfection of a security interest in motor vehicles is governed by § 4505.13 of the Ohio Revised Code. The relevant portion of this statute provides:

> (B) Subject to division (A) of this section, any security agreement covering a security interest in a motor vehicle, *if a notation of the agreement has been made by a clerk of a court of common pleas on the face of the certificate of title* or the clerk has entered a notation of the agreement into the automated title processing system and a physical certificate of title for the motor vehicle has not been issued, is valid as against the creditors of the debtor, whether armed with process or not, and against subsequent purchasers, secured parties, and other lienholders or claimants.

Therefore, pursuant to § 4505.13(B), where a certificate of title has been issued to the owner of a motor vehicle, there is but one method to perfect the security interest: Notation of the agreement on the certificate of title. As recently explained by the Bankruptcy Appellate Panel for the Sixth Circuit:

---

[1] *Butner v. United States*, 440 U.S. 48, 55, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.")

Page 7

Ericka Parker, Trustee v. James Lewis
Case No. 11-3127

> Under Ohio law, perfection of a security interest is generally accomplished through the filing of a financing statement. However, this method of perfection is inapplicable in the case of motor vehicles." Under Ohio's Certificate of Motor Vehicle Title Act, except for vehicles held as inventory, the notation of a lien on the vehicle's certificate of title is the exclusive manner by which a security interest is perfected in a motor vehicle.

*Drown v. Perfect (In re Giaimo)*, 440 B.R. 761, 765 (6th Cir. B.A.P. 2010). In this case, the evidence before the Court shows that the Defendant failed to take the necessary step, as required by requirement of O.R.C. § 4505.13(B), of noting his security interest on the certificate of title of the Debtor's vehicle.

Notwithstanding the explicit requirement of O.R.C. § 4505.13(B), the Defendant takes the position that he should still be considered to hold a perfected security interest in the Debtor's vehicle, arguing that the Trustee's position, *contra*, "is flawed because the Defendant could go to a title office at anytime and perfect the lien and could still do so today if he felt it necessary." (Doc. No. 10, at pg. 2). Thus, according to the Defendant, if the "Debtor defaulted on the loan, Defendant would have every right to execute his security agreement, and pursue any remedies including repossession and a sale of the automobile." *Id.* This position, however, does not stand up to scrutiny.

At the commencement of a case an automatic stay arises by operation of law. 11 U.S.C. § 362(a). The scope of the stay specifically extends to "any act to create, *perfect*, or enforce any lien against property of the estate[.]" 11 U.S.C. § 362(a)(4) (emphasis added). Similarly, it extends to stay "any act to create, *perfect*, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title[.]" 11 U.S.C. § 362(a)(5) (emphasis added).

Page 8

Ericka Parker, Trustee v. James Lewis
Case No. 11-3127

Actions taken in violation of the stay are "invalid." *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 911 (6th Cir. 1993). Thus, after the Debtor filed her bankruptcy case, any action undertaken by the Defendant to perfect his lien against the Debtor's vehicle, or to obtain possession of his collateral, would not have been enforceable. Even this aside, such actions would have been subject to avoidance by the Trustee pursuant to § 549(a) which, subject to some limited exceptions, prohibits any post-petition transfers of property.[2] *See Malloy v. St. John Med. Ctr. (In re Woodward)*, 234 B.R. 519, 525-26 (Bankr. N.D.Okla.1999) (postpetition attempt to perfect a security interest constitutes a transfer under the Bankruptcy Code, and may be avoided). Consequently, contrary to his position, once the Debtor filed her bankruptcy case, the Defendant had no right to either perfect his security interest in the Debtor's vehicle or to otherwise exercise any control over the vehicle.

The Defendant next argues that the Trustee should recognize his security interest because the Debtor reaffirmed the debt on the automobile, thereby "reestablishing Defendant's security interest

---

[2]

Section 549(a) provides:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate–
>
> > (1) that occurs after the commencement of the case; and
> >
> > (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
> >
> > > (B) that is not authorized under this title or by the court.

Page 9

in the automobile." (Doc. No. 10, at pg. 2).[3] This position, however, fails on a couple of different levels.

First, it is black letter law that the creation and perfection of a security interest are two separate events. *Harriet & Henderson Yarns, Inc. v. Castle*, 75 F.Supp.2d 818, 829 (W.D.Tenn.1999). Specifically, the creation of a security interest effects only the parties to the agreement; while the perfection of the security interest makes it effective against third parties who may acquire rights in the collateral. *U. S. v. Gleaners & Farmers Co-op. Elevator Co.*, 481 F.2d 104, 106 fn. 4 (7th Cir. 1973). Thus, even assuming the Defendant is correct, and his reaffirmation agreement with the Debtor reestablished his security interest, it does not answer the issue now before the Court: Was his security interest in the Debtor's vehicle perfected?

Even this aside, the Defendant's reading concerning the effect of a reaffirmation agreement does not find any support in the Bankruptcy Code. Under the Bankruptcy Code, a properly executed reaffirmation agreement simply operates to exclude a prepetition debt from the scope of the bankruptcy discharge. 11 U.S.C. § 524(c). That is, a reaffirmation agreement simply permits a debtor's "personal liability" to continue on an obligation, notwithstanding the entry of a bankruptcy discharge. *In re Law*, 421 B.R. 735, 738 (Bankr. W.D.Pa. 2010).

---

[3] As a part of this argument, the Defendant also stated to the Court that he "has a security interest in the property (i.e. automobile), but not a perfected lien at this time; that does not in anyway mean that the Defendant does not have an unperfected security interest." This argument, however, is a *non sequitur* as it first acknowledges that the Defendant did not have a perfected lien, but then maintains that the lien was not unperfected, thus connoting that the lien was perfected.

Page 10

Ericka Parker, Trustee v. James Lewis
Case No. 11-3127

A debtor's "personal liability" on debts, however, is set apart from and distinct from the treatment afforded by the Code to *in rem* interest in property, such as liens and security interests. *See, e.g.*, 11 U.S.C. § 506. The discharge of a debtor's personal liability is also distinct from the trustee's role in the administration of the estate. *In re McNealy*, 31 B.R. 932, 934 (Bankr. S.D.Ohio 1983) ("It is similarly fundamental in bankruptcy case administration that the distribution of the estate and the procedures pertaining to the right of a debtor to a discharge are two separate aspects."). Consequently, there is nothing to even remotely suggest that a reaffirmation agreement operates to revive or otherwise cause a security agreement to prime a trustee's interest in estate property.

Even so, the Defendant's point, concerning the recognition of its security interest, does raise an issue that needs to be addressed. It is a basic facet of bankruptcy law that *in rem* interests are generally unaffected by a Chapter 7 bankruptcy and that those liens and security interests which are not avoided in a debtor's bankruptcy will remain intact after the case is concluded. *Dewsnup v. Timm*, 502 U.S. 410, 418, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992). To this end, it is required that some sort of affirmative action be taken to avoid a lien, and that the avoidance of the lien be based upon specific statutory authority provided by the Bankruptcy Code. *Cen–Pen Corp. v. Hanson*, 58 F.3d 89, 92-93 (4th Cir.1995).

A security interest may, therefore, survive bankruptcy even though it is not perfected. As such, the mere failure of the Defendant to perfect his security interest does not, alone, provide authority for this Court to avoid his *in rem* interest in the Defendant's vehicle. Although not specified in her complaint, the authority for the Trustee's position is provided by § 544(a)(1).[4]

---

[4]

Court may amend pleading to conform to issues placed before court. *See* 11 U.S.C. § 105(a); *In re Barton*, 321 B.R. 869, 875 (Bankr. N.D.Ohio 2004) (bankruptcy court, under its equitable powers, may revise a pleading to conform to the evidence presented); FED.R.BANKR.P. 7015(b).

Page 11

Ericka Parker, Trustee v. James Lewis
Case No. 11-3127

Section 544(a)(1), which is commonly referred to as the strong-arm clause, vests the bankruptcy trustee, as of the commencement of a bankruptcy case, with the rights and powers of a hypothetical judgment lien creditor under applicable state law. The effect of this section is that any security interest which is not properly perfected may be avoided by the bankruptcy trustee, if a judgment lien creditor would have prevailed against the unperfected interest under applicable state law.

In this matter, because the Defendant's security interest was not noted on the certificate of title, a judgment lien creditor would have prevailed over his interest in the Debtor's vehicle. As set forth above, O.R.C. § 4505.13(B) only afford validity to a security agreement in a vehicle as against "other lienholders" when the agreement is noted on the vehicle's certificate of title. Accordingly, the Defendant's security interest in the Debtor's vehicle is not enforceable against the Trustee. *In re Giaimo)*, 440 B.R. at 765 ( "Under § 544(a)(1), if a lien against the debtor's property was improperly perfected, or not perfected at all, before the bankruptcy petition was filed, the trustee may take priority.")

In summation, the Court finds that the Defendant did not properly perfect his security interest in the Debtor's vehicle, thus subjecting the lien to avoidance pursuant to 11 U.S.C. § 544(a)(1). Furthermore, since the Defendant's security interest is not enforceable against the Trustee, the prepetition payment made by the Debtor to the Defendant for the sum of $3,000.00 enabled the Defendant to receive more than he would have received in a hypothetical Chapter 7 case had the transfer not occurred. Accordingly, the Trustee has satisfied her burden with respect to § 547(b)(5), the only element controverted under § 547(b).

Ericka Parker, Trustee v. James Lewis
Case No. 11-3127

## 11 U.S.C. § 547(b)(2)

Against the Trustee's preference action, the Defendant also raises an affirmative defense, as set forth in § 547(c)(2), known as the "ordinary course of business" defense. This section provides:

> (c) The trustee may not avoid under this section a transfer–
>
>> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was–
>>
>>> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>>>
>>> (B) made according to ordinary business terms;

This section operates to protect recurring, customary transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee. 3-547 Collier Bankruptcy Manual, 3d Edition Revised P 547.04[2]. Its purposes "is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." *Luper v. Columbia Gas of Ohio, Inc. (In re Carled, Inc.)*, 91 F.3d 811, 815 (6th Cir.1996), *citing* S.Rep. No. 989, 95th Cong., 2nd Sess. 88, reprinted in 1978 U.S.C.C.A.N. 5787, 5874.

The party asserting a defense to a preferential transfer based upon the ordinary course defense set forth in § 547(c)(2) carries the burden to prove the nonavoidability of the transfer. 11 U.S.C. § 547(g). In support of his burden, the Defendant stated:

> In the case at hand, the Debtor borrowed $6,000.00 from Defendant. The Defendant obtained the funds via a cash advance on his credit card. These funds were given to Debtor, and used to purchase an automobile with the understanding that Debtor would immediately pay $3,000.00 on Defendant's

Page 13

> credit card when she received her bonus check. When the bonus check was received, Debtor made payment of $3,000.00 on Defendant's credit card.

(Doc. No. 10, at pg. 3). The Defendant then went on to state: all his "actions were in the ordinary course of business and financial affairs of the parties. Further, these actions were in line with the prior dealing of the parties." *Id.* at pg. 3-4. Based upon the lack of any corroborating evidence, however, the Court disagrees with these statements.

As set forth in the introductory language of § 547(c)(2), the Defendant is required to show that the underlying debt was incurred in the ordinary course of the business or financial affairs of both the debtor and the transferee. Thereafter, it must be shown that the transfer itself was made in the ordinary course of both the debtor and the transferee. As a general matter, in making these assessments, the Sixth Circuit Court of Appeals held that whether a debt is incurred in the ordinary course is a "peculiarly factual" analysis, not capable of being subjected to a "precise legal test." *In re Fulghum Const. Corp.*, 872 F.2d 739, 743 (6th Cir.1989), *citing In re First Software Corp.*, 81 B.R. 211, 213 (Bankr. D.Mass.1988). An ordinary course business defense, thus, generally assesses broad indicia such looking to whether the transaction was routine and not atypical, fraudulent, or inconsistent with an arms-length transaction. *Speco Corporation v. Canton Drop Forge, Inc. (In re Speco Corporation)*, 218 B.R. 390, 398 (Bankr. S.D.Ohio 1998).

In this matter, there is no claim by the Defendant that he regularly lent thousands of dollars to the Debtor. As such, there is no indication that the creation of the obligation between the Debtor and the Defendant constituted the continuation of a normal pattern of dealing between them. Moreover, taking a large cash advance to obtain funds for a loan, as the Defendant did, and then the Debtor's use of a bonus payment to repay a large sum of the debt, $3,000.00, are normally infrequent and atypical occurrences for individual debtors, and thus inapposite to routine transactions.

Page 14

Ericka Parker, Trustee v. James Lewis
Case No. 11-3127

Finally, the existence of a familial relationship between the Debtor and the Defendants, while not constituting an absolute fatal flaw, does not easily lend itself to an ordinary course defense. In this type of situation, a defendant seeking to raise an ordinary course defense, where a family member is involved, needs to offer some proof. As explained in a decision recently rendered by another bankruptcy court:

> Without something more, the mere existence of a family relationship will not establish an ordinary course. Quite to the contrary, family relationships may even suggest motivations for a loan outside the ordinary course of the lender's financial affairs. In the present instance, therefore, [debtor's] status as a sibling cannot absolve, but will reinforce the need for proof of the lender's ordinary course of financial activity. Having offered no such evidence, the defendant fails in this further respect to carry his burden of proof.

*Schlant, v. Bartolucci (In re Gawronski)*, 411 B.R. 139, 142 (Bankr. W.D.N.Y. 2009).

Given these considerations, with the Defendant having offered no corroborating evidence to support his position that the loan transaction between him and the Debtor was an ordinary and normal financial occurrence, the Court cannot find that he has met his burden for purposes of 11 U.S.C. § 547(c)(2). Therefore, as the Trustee has sustained her burden of establishing the existence of a preferential transfer under § 547(b), and with the Defendant having not established the existence of an affirmative defense to the preference action, the Trustee's Motion for Summary Judgment must be Granted.[5]

---

[5] Upon recovery of the avoided transfer by the Trustee, the Defendant may seek recovery from the estate by filing a proof of claim in accordance with 11 U.S.C. § 502(d) and § 502(h) and Bankruptcy Rule 3002(c)(3).

Page 15

Ericka Parker, Trustee v. James Lewis
Case No. 11-3127

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion for Summary Judgment filed by the Plaintiff/Trustee, Ericka Parker, be, and is hereby, GRANTED.

***IT IS FURTHER ORDERED*** that the Defendant, James Lewis, is hereby directed to surrender and deliver to the Trustee property of the estate in the sum of $3,000.00.

***IT IS FURTHER ORDERED*** that, pursuant to Bankruptcy Rule 9021, the Clerk, United States Bankruptcy Court, shall issue a judgment entry in favor of the Trustee in accordance with the above order.

Dated: November 22, 2011

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 16

# CERTIFICATE OF SERVICE

Copies were mailed this 22nd day of November, 2011 to:

James J Lewis
235 Lester
Northwood, OH 43619

Edward Lee Schimmel
Hizer & Schimmel
4303 Woodville Rd.
Northwood, OH 43619

Ericka S Parker (Trustee)
232 10th St
Toledo, OH 43604

                                           /s/ Laura Doerfler
                               Deputy Clerk, U.S. Bankruptcy Court